IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

FRANK NELLOM,                         :    CIVIL ACTION
                                      :    No. 15-1229
        Plaintiff,                    :
                                      :
    v.                                :
                                      :
THE DELAWARE COUNTY DOMESTIC          :
RELATIONS SECTION, et al.,            :
                                      :
        Defendants.                   :

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                      November 17, 2015

Plaintiff Frank Nellom, proceeding pro se, brings this action pursuant to 42 U.S.C. § 1983 for declaratory and injunctive relief, as well as compensatory damages, against a series of Defendants, all of whom are employees of the Delaware County Domestic Relations Section. After a hearing with the parties and for the reasons that follow, the Court will dismiss Plaintiff's Second Amended Complaint in its entirety, without leave to amend.

I.    BACKGROUND

Plaintiff filed his original complaint in the Philadelphia Court of Common Pleas against Defendant Delaware County Domestic Relations Section ("DRS"), alleging that he was falsely arrested and maliciously prosecuted in connection with divorce and child support proceedings in Delaware County. See

generally ECF No. 1, Ex. A. Plaintiff originally sought "just compensation for Emotional Distress suffered from over two years of malicious prosecution, arrests, and imprisonments for 31 days," requesting up to $3,620,000 in compensatory and punitive damages. Id. at ¶ 8. DRS removed the case to this Court on March 11, 2015. ECF No. 1.

After DRS filed a motion to dismiss Plaintiff's Complaint, ECF No. 3, Magistrate Judge Thomas J. Rueter entered a Report and Recommendation ("R. & R.") recommending that the Court dismiss Plaintiff's Complaint on grounds including, but not limited to, Eleventh Amendment immunity. See R. & R. 2-7, ECF No. 11. The Court adopted the R. & R., granting DRS's motion to dismiss and giving Plaintiff leave to file an amended complaint. ECF No. 16.

On June 8, 2015, Plaintiff filed his First Amended Complaint, essentially restating identical claims against the DRS employees. ECF No. 17. He specifically claimed that Defendants created a "false debt" against him, "retaliated against him by abuse of process," and "proceed[ed] against [him] in absence of a complaint." Id. at ¶¶ 2, 11-12. The main difference in the First Amended Complaint, as compared with

Plaintiff's original complaint, was that Plaintiff named employees "in their individual capacity."[1] Id. at ¶ 9.

The DRS employees (as well as DRS itself, although only the employees are named in the caption of the First Amended Complaint) (collectively, "Defendants") filed a motion to dismiss Plaintiff's First Amended Complaint, essentially arguing that even when viewed favorably as a pro se filing, it falls short of the pleading requirements set forth in Ashcroft v. Iqbal, 556 U.S. 662 (2009) and Bell Atlantic Corp. v. Twombly, 550 U.S. 554 (2004). ECF No. 27. Defendants argued that the First Amended Complaint did not contain specific allegations of "willful misconduct" on the part of the DRS employees, and accordingly, the First Amended Complaint should be dismissed.

On July 29, 2015, the Court granted Defendants' Motion to Dismiss and dismissed Plaintiff's First Amended Complaint without prejudice.[2] ECF No. 33. The Court stated in a footnote to the Order that "Plaintiff will be granted one final opportunity to file an amended complaint by Tuesday, August 18, 2015." Id. at n.1.

---

[1]      Plaintiff presumably chose this language to avoid the Eleventh Amendment immunity issue.

[2]      Plaintiff had also filed a motion for summary judgment on July 13, 2015, ECF No. 31, to which Defendants responded on July 28, 2015, ECF No. 32. In the July 29, 2015 Order, the Court denied Plaintiff's Motion for Summary Judgment as moot. ECF No. 33.

On August 17, 2015, Plaintiff filed his Second Amended Complaint.[3] ECF No. 35. Plaintiff again restated his claims against the DRS employees, but this time, Plaintiff added fifteen new individual defendants.[4] Plaintiff also now avers Defendants' "[f]raud upon the Court," which he claims is "evident from the fact [that] thousands of dollars in False Debt w[as] created without a Complaint to corrupt honorable state court judges by rendering [sic] judgment in [Defendants'] favor." Id. at ¶ 1.

As to relief sought, Plaintiff seeks an "[i]njunction against Defendants proceeding further against him in this case of false debt derived from Fraud Upon The Court without complaint is warranted." Id. at ¶ 55(a). He also seeks the following: compensatory damages between $2,880,000.00 and

---

[3]     Defendants' Motion to Dismiss refers to this Amended Complaint as "Plaintiff's (Third) Amended Complaint." ECF No. 36. However, this is truly Plaintiff's second amended complaint. Plaintiff's original complaint was filed on October 12, 2014. ECF No. 1. Plaintiff's first amended complaint was filed on June 8, 2015. ECF No. 17. Plaintiff then amended his complaint again on August 17, 2015, making it his second amended complaint. ECF No. 36.

[4]     Plaintiff adds several new employee defendants based on their "actual name or fictitious number." Second Am. Compl. ¶ 4. The new defendants include L. Smith, Judy Cacciola, Kelly Macdowell, and those individuals with Worker ID numbers 23110, 23201, $1ATT, 23110, 23511, 23512, 23207, 23420, 23509, $FIRE, 23131, 23121, and 23427. Id. Plaintiff now omits Miriam Williams, the mother of Plaintiff's daughter, who was listed as a defendant in the First Amended Complaint. First Am. Compl. ¶ 7.

$5,760,000.00; attorney fees (although he represents himself) and court costs; and such other relief as justice requires. Id. at ¶ 55(b)-(d).

On August 28, 2015, Defendants filed a motion to dismiss for lack of jurisdiction and failure to state a claim. ECF No. 36. Plaintiff has failed to respond to Defendants' motion to dismiss his Second Amended Complaint. Instead, on September 14, 2015, Plaintiff filed a Motion for Summary Judgment. ECF No. 37. In his motion, Plaintiff misunderstands the standard for summary judgment and seems to argue that because there is a "material fact" that his motion should prevail. Id. at ¶¶ 5-6. He states that there is "the material fact that 'no legal Complaint exist[s] of record.'" Id. at ¶ 6. On September 25, 2015, Defendants denied all allegations in Plaintiff's motion for summary judgment, mostly qualified with the statement that the allegations are denied "[t]o the extent these allegations are comprehensible." ECF No. 38.

On November 10, 2015, the Court held a hearing and afforded Plaintiff the opportunity to respond to the Defendant's motion to dismiss the amended complaint.

## II.  LEGAL STANDARD

In deciding a motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure

12(b)(1), the court will consider "whether the allegations on the face of the complaint, taken as true, allege facts sufficient to invoke the jurisdiction of the district court." Taliaferro v. Darby Twp. Zoning Bd., 458 F.3d 181, 188 (3d Cir. 2006) (internal quotations omitted). The court may also take into account "documents referenced [in the complaint] and attached thereto, [and construe all allegations] in the light most favorable to the plaintiff." Gould Elecs. Inc. v. United States, 220 F.3d 169, 176 (3d Cir. 2000).

A party may also move to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). When considering such a motion, a court must "accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the non-moving party." DeBenedictis v. Merrill Lynch & Co., 492 F.3d 209, 215 (3d Cir. 2007). To withstand a motion to dismiss, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. This "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. Although a plaintiff is entitled to all reasonable inferences from the facts alleged, a plaintiff's legal conclusions are not entitled to deference and the Court is "not

bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986), cited with approval in, Twombly, 550 U.S. at 555.

The pleadings must contain sufficient factual allegations so as to state a facially plausible claim for relief. See, e.g., Gelman v. State Farm Mut. Auto. Ins. Co., 583 F.3d 187, 190 (3d Cir. 2009). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Id. (quoting Iqbal, 556 U.S. at 678). In deciding a Rule 12(b)(6) motion, the Court limits its inquiry to the facts alleged in the complaint and its attachments, matters of public record, and undisputedly authentic documents if the complainant's claims are based upon these documents. See Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994); Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).

Although a pro se litigant's pleadings are to be construed liberally, United States v. Miller, 197 F.3d 644, 648 (3d Cir. 1999), pro se litigants are not excused from substantive and procedural law. McNeil v. United States, 508 U.S. 106, 113 (1993) (explaining that "we have never suggested that procedural rules in ordinary civil litigation should be

interpreted so as to excuse mistakes by those who proceed without counsel"); <u>Faretta v. California</u>, 422 U.S. 806, 834 n.46 (1975) ("The right of self-representation is not a license to abuse the dignity of the courtroom. Neither is it a license not to comply with relevant rules of procedural and substantive law.").

**III. DISCUSSION**

Defendants move to dismiss Plaintiff's Second Amended Complaint for lack of jurisdiction based on <u>Younger</u> abstention, the <u>Rooker-Feldman</u> doctrine, and quasijudicial immunity. Defendants also move to dismiss pursuant to Rule 12(b)(6) for failure to state a claim.

In his Second Amended Complaint, Plaintiff seeks to state a "claim that defendants perpetuated Fraud Upon the Court." Second Am. Compl. ¶ 2. He alleges that this "actual fraud . . . warrants 42 U.S.C. § 1983 relief" because it "deprived him of due process and equal protection guaranteed by the First, Fourth, and Fourteenth Amendment to the United States Constitution." <u>Id.</u>

In his prayer for relief, Plaintiff seeks an "[i]njunction against Defendants proceeding further against him in this case of false debt derived from Fraud Upon the Court without complaint." <u>Id.</u> ¶ 55(a). He also seeks compensatory

damages for "a total of four (4) unlawful arrests, and forty eight (48) days of imprisonment . . . for (1) loss of liberty, and (2) physical and/or emotional pain and suffering caused by the false arrest." Id. ¶ 55(b). He calculates his total compensatory damages to be "between [$]2,880,000.00-5,760,000.00." Id.

Given that pro se complaints are to be construed liberally, Miller, 197 F.3d at 648, and based upon the allegations set forth in the Second Amended Complaint, Plaintiff's claims will be analyzed as seeking injunctive and compensatory relief under § 1983 for the following: (1) fraud upon the court based upon an alleged "false debt"; (2) retaliation in violation of the First Amendment; (3) malicious prosecution and false arrest in violation of the Fourth Amendment; and (4) violation of the Due Process and Equal Protection Clauses as made applicable to the states via the Fourteenth Amendment. Plaintiff's claims so construed will provide the groundwork for the following analysis.

Many of the bases for dismissal discussed in Defendants' motion overlap, and "although the Complaint [will] ultimately be dismissed in its entirety, no single doctrine or legal principle is dispositive as to the whole pleading." Mikhail v. Kahn, 991 F. Supp. 2d 596, 611 (E.D. Pa. 2014). Although most of Plaintiff's claims might be dismissed on the

9

basis of quasijudicial immunity alone, their dismissal on that basis may not resolve some of the hybrid claims against all Defendants or some requests for declaratory or injunctive relief. Moreover, the jurisdictional issues must come first.

### A.   Younger Abstention

Defendants first argue that Plaintiff's complaint should be dismissed on the basis of Younger abstention because it "deal[s] with a request for an injunction against ongoing state court support proceedings." Defs.' Mem. of Law in Support of Mot. to Dismiss Pl.'s (Third) Am. Compl. 3, ECF No. 36.

Following the Supreme Court's decision in Younger v. Harris, 401 U.S. 37 (1971), a court is precluded from exercising federal jurisdiction where it "has been invoked for the purpose of restraining certain state proceedings." Nat'l City Mortg. Co. v. Stephen, 647 F.3d 78, 83 (3d Cir. 2011) (quoting Trent v. Dial Med., Inc., 33 F.3d 217, 233 n.5 (3d Cir. 1994)). But "Younger abstention only comes into play when an important state interest is implicated." Anthony v. Council, 316 F.3d 412, 418 (3d Cir. 2003).

The Third Circuit has instructed that Younger abstention is appropriate where state proceedings (1) are judicial in nature and ongoing; (2) implicate important state

interests; and (3) afford an adequate opportunity to raise the federal claims. Id.

Here, Plaintiff contends that the DRS employees committed fraud upon the court by filing some kind of false debt against Plaintiff in order to initiate support proceedings. Second Am. Compl. ¶ 1. For a claim of fraud upon the court, the plaintiff is required to show an intentional fraud by an officer of the court, which is directed at the court itself and actually deceives the court. Herring v. United States, 424 F.3d 384, 390 (3d Cir. 2005); see also United States v. Burke, 193 F. App'x 143, 144 (3d Cir. 2006) (nonprecedential). "[T]he fraud on the court must constitute 'egregious misconduct . . . such as bribery of a judge or jury or fabrication of evidence by counsel.'" Herring, 424 F.3d at 390 (omission in original). The relief sought in an action for fraud upon the court is "the reopening of a case" and thus "challenges the very principle upon which our judicial system is based: the finality of a judgment." Id. at 386.

By bringing a claim for fraud upon the court, Plaintiff seeks to reopen and enjoin state support proceedings that are ongoing and judicial in nature. Recently, the Court of Common Pleas of Delaware County, Pennsylvania, Domestic Relations Section, ordered Plaintiff to appear in person in court on August 24, 2015, for disobeying an order of the court

11

for support.[5] ECF No. 35-1, at 156. As the Third Circuit has noted, child support orders "endure for many years and require continual state court involvement" whereby "state courts continually monitor, enforce, and modify [the] child support orders." Anthony, 316 F.3d at 419 n.9. Therefore, the first requirement for Younger abstention is satisfied.

Next, the state proceedings implicate important state interests. "[T]here can be no doubt that child support-related proceedings are quintessential 'domestic relations [proceedings that] are traditionally the domain of state courts' and their agencies, thus implicating important state interests." Sheils v. Bucks Cty. Domestic Relations Section, 921 F. Supp. 2d 396, 411 (E.D. Pa. 2013) (quoting Yang v. Tsui, 416 F.3d 199, 204 (3d Cir. 2005)) (alteration in original). The Third Circuit has cited New Jersey state law, which grants its courts "authority to order and direct the payment of child support," to explain that "[e]nsuring the provision of child support is a function particular to the states." Anthony, 316 F.3d at 418-19. Similarly, Pennsylvania law grants its courts authority over support actions or proceedings. See 23 Pa. Const. Stat.

---

[5]       At a hearing before this Court on November 10, 2015, on Defendant's Motion to Dismiss, Plaintiff confirmed that the proceedings are ongoing and that he is expected to appear in the Delaware County Court of Common Pleas on December 7, 2015.

§ 4341(c). Therefore, the second requirement for <u>Younger</u> abstention is likewise satisfied.

Finally, Plaintiff has a mechanism to obtain judicial review of his claim for injunctive relief. The Pennsylvania Rules of Civil Procedure provide for appellate practice in child support matters. <u>See</u> <u>Christianson v. Ely</u>, 838 A.2d 630, 634 (Pa. 2003) (reviewing support order and citing to Rules of Civil Procedure Governing Actions for Support, Pa. R. C. P. § 1910.1 et seq.). The rules to contest the validity or enforcement of a registered support order that originated in another state are specifically found at 23 Pa. C. S. §§ 7606, 7607. Section 7606 explains that

> [a] nonregistering party seeking to contest the validity or enforcement of a registered order in this State must request a hearing within 20 days after the date of mailing or personal service of notice of the registration. The nonregistering party may seek to vacate the registration, to assert any defense to an allegation of noncompliance with the registered order or to contest the remedies being sought or the amount of any alleged arrearages pursuant to section 7607 (relating to contest of registration or enforcement).

23 Pa. C. S. § 7606(a). Section 7606 provides the defenses upon which a party may rely to contest the validity or enforcement of a registered order or vacate the registration. <u>Id.</u> § 7607(a), (b). Such defenses include that "[t]he issuing tribunal lacked personal jurisdiction over the contesting party" and "[t]he

13

order was obtained by fraud." Id. § 7607(a)(1), (2); see Worley v. Effler, 101 A.3d 798 (Pa. Super. Ct. 2014) (explaining a party's use of § 7606 and § 7607). Therefore, because Plaintiff was afforded an adequate opportunity to raise his claims, the final requirement for Younger abstention is satisfied.

But "even if the necessary three predicates exist," Younger abstention is not appropriate where "(1) the state proceedings are being undertaken in bad faith or for purposes of harassment or (2) some other extraordinary circumstances exist . . . such that deference to the state proceeding will present a significant and immediate potential for irreparable harm to the federal interests asserted." Anthony, 316 F.3d at 418.

Here, Plaintiff has not responded to Defendants' motion to dismiss, nor did he address the issue at the hearing. As Defendants point out, Plaintiff "might be expected to maintain that the proceedings against him were initiated in bad faith and for the purposes of harassment." Defs.'s Mem. 4. Nevertheless, Plaintiff has not set forth any well-pled facts in writing, or at the hearing, that support any such allegation that the proceedings were undertaken in bad faith or for

purposes of harassment.[6] Nor is there any indication that
Pennsylvania courts are generally unwilling to adjudicate
parents' rights relating to support proceedings. Rather,
Plaintiff's "allegations of bias are limited to the alleged
'vendetta' of the state [and] county defendants in this case."
Pappas v. Township of Galloway, 565 F. Supp. 2d 581, 590 (D.N.J.
2008).

Further, Plaintiff has not alleged the existence of
any "extraordinary circumstances" under the second exception to
Younger abstention. Such circumstances exist where there is an
"extraordinarily pressing need for immediate federal equitable
relief" created, because a "state court is incapable of fairly
and fully adjudicating the federal issues before it." Kugler v.
Helfant, 421 U.S. 117, 124-25 (1975). "Some actual showing of
bias or prejudice must be made," Makihail, 991 F. Supp. 2d at
631, and Plaintiff has made no such showing here. Accordingly,
Plaintiff's request for injunctive relief is barred by Younger.

However, Younger does not apply to the compensatory
relief sought by Plaintiff because Younger abstention only
applies only "where the precise claims raised in federal court
are available in the ongoing state proceedings." Addiction
Specialists, Inc. v. Twp. of Hampton, 411 F.3d 399, 413 (3d Cir.

---

[6]      While Plaintiff loudly proclaims that he has been
treated unfairly in the state court, there are no facts on the
record that support this claim.

15

2005). Since Plaintiff "could not and cannot seek compensatory or punitive damages" through the support payment proceedings at the state level, Mikhail, 991 F. Supp. 2d at 633, the Court will address Defendants' remaining grounds for dismissal.

   B.   Rooker-Feldman Doctrine

      Defendants also move to dismiss Plaintiff's Second Amended Complaint for lack of jurisdiction based on the Rooker-Feldman doctrine. Defs.'s Mem. 4.

      The Rooker-Feldman doctrine instructs that "federal district courts lack jurisdiction over suits that are essentially appeals from state-court judgments." Great W. Mining & Mineral Co. v. Fox Rothschild LLP, 615 F.3d 159, 165 (3d Cir. 2010). It applies to "cases brought by state-court losers inviting . . . district court review and rejection of [the state court's] judgments." Skinner v. Switzer, 562 U.S. 521, 532 (2011) (omissions and alteration in original). As such, the doctrine creates a jurisdictional bar where the federal claim was "actually litigated" in state court or where the federal claim is "inextricably intertwined" with a previous state-court judgment. Taliaferro v. Darby Twp. Zoning Bd., 458 F.3d 181, 192-93 (3d Cir. 2006). Federal claims are "inextricably intertwined" with a previous state court judgment when "the federal court must determine that the state court judgment was

16

erroneously entered in order to grant the requested relief" or "the federal court must take an action that would negate the state court's judgment." In re Knapper, 407 F.3d 573, 581 (3d Cir. 2005).

In essence, the Third Circuit has stated the four requirements for application of the Rooker-Feldman doctrine as follows:

> (1) the federal plaintiff lost in state court; (2) the plaintiff "complain[s] of injuries caused by [the] state-court judgments"; (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments. The second and fourth requirements are the key to determining whether a federal suit presents an independent, non-barred claim.

Great W. Mining, 615 F.3d at 166 (alterations in original) (internal citations omitted) (quoting Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005)).

However, Rooker-Feldman is not a bar where a "plaintiff asserts injury caused by the defendant's actions and not by the state-court judgment." Great W. Mining, 615 F.3d at 167. To determine whether a plaintiff asserts injury caused by the defendant's actions rather than the state court judgment itself, the Third Circuit has stated that a "useful guidepost" is "whether the injury complained of in federal court existed prior to the state-court proceedings and thus could not have

17

been 'caused' by those proceedings." Id. Of course, this inquiry "becomes more complicated when a federal plaintiff complains of an injury that is in some fashion related to a state-court proceeding." Id.

Here, as previously stated, Plaintiff's claims are construed as follows: (1) fraud upon the court based upon the alleged "false debt"; (2) retaliation in violation of the First Amendment; (3) malicious prosecution and false arrest in violation of the Fourth Amendment; and (4) a violation of the Due Process and Equal Protection Clauses as made applicable to the states via the Fourteenth Amendment. See Second Am. Compl. ¶¶ 6, 22-23. The injunctive and declaratory relief sought by Plaintiff for fraud upon the court, as discussed above, is barred by Younger. Applying Rooker-Feldman to these claims, the doctrine does not bar Plaintiff's claim for fraud upon the court (to the extent that the relief sought is for monetary damages), and it does not bar Plaintiff's claims for retaliation, malicious prosecution, or equal protection. But it does bar Plaintiff's false arrest and due process claims.

### 1.   Fraud Upon the Court for "False Debts"

First, Plaintiff's claim for fraud upon the court, insofar as he seeks monetary damages for the alleged act, is not barred by Rooker-Feldman. Even if Plaintiff "lost" in state

court because the support orders were entered against him,
Plaintiff does not complain of injuries caused by the state
court judgment.

Defendants rely on <u>Van Tassel v. Lawrence Cty.</u>
<u>Domestic Relations Section</u>, 659 F. Supp. 2d 672, 688-89 (W.D.
Pa. 2009), for the proposition that a plaintiff "is not entitled
to a 'second opinion' from th[e federal] court because the
<u>Rooker-Feldman</u> doctrine bars her claim." Defs.'s Mem. 6.
However, in a nonprecedential opinion, the Third Circuit
reviewed the district court's decision in <u>Van Tassel</u> and
explained that the <u>Rooker-Feldman</u> doctrine specifically barred
the district court from enjoining the enforcement of a state
court order and awarding preliminary and permanent declaratory
relief because the bases for relief were "inextricably
intertwined" with the state court proceedings. <u>Van Tassel v.</u>
<u>Lawrence Cty. Domestic Relations</u>, 390 F. App'x 201, 203 (3d Cir.
2010) (nonprecedential). In other words, granting the injunctive
or declaratory relief sought by the plaintiff "would require the
district court to conclude the state court made an incorrect
legal and/or factual determination and would effectively reverse
the state court decision or void its ruling." <u>Id.</u>

In the present case, Plaintiff seeks more than
injunctive relief; he also seeks compensatory damages for the
harm suffered as a result of Defendants' alleged acts. In <u>Great</u>

19

<u>Western Mining</u>, the plaintiffs claimed that the state court's decisions against them were predetermined before a hearing had taken place due to an alleged conspiracy between the arbitrator, attorneys, and state court judges. <u>Great W. Mining</u>, 615 F.3d at 171. The Third Circuit determined that the plaintiffs were "not merely contending that the state-court decisions were incorrect or that they were themselves in violation of the Constitution." <u>Id.</u> at 172. Instead, the plaintiffs "claim[ed] that the 'people involved in the decision violated some independent right,' that is, the right to an impartial forum." <u>Id.</u> (citing <u>Nesses v. Shepard</u>, 68 F.3d 1003, 1005 (7th Cir. 1995)). Therefore, the Third Circuit stated that while the plaintiffs' "claim for damages may require a review of state-court judgments and even a conclusion that they were erroneous, those judgments would not have to be rejected or overruled in order for [the plaintiff] to prevail." <u>Id.</u> at 173.

Here, the source of Plaintiff's injuries for his fraud upon the court claim is not just the state court judgment itself. Instead, Plaintiff alleges that Defendant Bradley with the approval of Defendant Rogers, both Delaware County Domestic Relations Services employees, "entered this false statement in the record as evidence of income . . . [t]o create a $963.03 monthly debt against Plaintiff." Second Am. Compl. ¶ 10. He further alleges that "Worker ID $ATT fabricated an Income

Withholding For Support to the Commonwealth to withhold $963.03 per month from Plaintiff under pretense of being Judge Cronin." Id. ¶ 11. Plaintiff also states that "Enforcement Team 15, and Worker ID 23512 certified $15,397.66 in false debt . . . in the Petition for Contempt against plaintiff." Id. ¶ 17.

In this sense, it was the Defendant-employees' alleged misconduct leading to the state court proceedings that injured him, not the state court judgment itself. See Mikhail, 991 F. Supp. 2d at 620 ("Of course, any harms caused by [the defendant] and her attorneys, such as fraud upon the court or malicious prosecution, for example, are not barred by Rooker-Feldman because they are not caused by any state court judgment."). A claim for fraud upon the court does not "necessarily compel[] the conclusion that the state court erred in its decisions-- because even injuries that 'help[] to cause the adverse state judgments' may be 'independent' of those judgments." Id. at 614 (quoting Great W. Mining, 615 F.3d at 168).

Even though Plaintiff's claim for fraud upon the court is based on an alleged "false debt," which would arguably involve a review of the facts and circumstances leading up to the state court judgment against him, the state court judgment need not be rejected or overruled for Plaintiff to prevail on his independent claim for damages. "[T]o the extent the factual predicate of [Plaintiff's] complaint is not [the child support]

21

order itself, but an alleged denial of his constitutional rights during the proceedings prior to entry of that order, it would appear Rooker-Feldman does not foreclose jurisdiction." Young v. Domestic Relations Div. Enf't Unit, No. 05-4498, 2007 WL 2319771, at *2 (E.D. Pa. Aug. 10, 2007). Therefore, because the claims "do[] not concern state-court judgments, but rather independent [acts] committed to obtain them, the Rooker-Feldman doctrine does not apply." Williams v. BASF Catalysts LLC, 765 F.3d 306, 315 (3d Cir. 2014).

### 2.   Retaliation Claim

Likewise, Plaintiff's retaliation claim is not barred by Rooker-Feldman. Plaintiff alleges that Defendants retaliated against him for initiating the federal court proceedings. Second Am. Compl. ¶ 50. This alleged injury is not from the state court's judgment. See Thomas v. Eby, 481 F.3d 434, 438 (6th Cir. 2007) (concluding that Rooker-Feldman does not apply because plaintiff complained "of injury resulting from alleged retaliation, not from the state court's judgment"); Kriss v. Fayette Cty., 827 F. Supp. 2d 477, 488 (W.D. Pa. 2011) (explaining that Rooker-Feldman did not bar the plaintiff's claim based on the defendant's alleged retaliation for the plaintiff having filed the state lawsuit because the outcome of the state lawsuit "is immaterial to the adjudication of

Plaintiffs' First Amendment retaliation claim"), aff'd, 504 F.
App'x 182 (3d Cir. 2012). Plaintiff would be able to obtain
relief on his retaliation claim "without invalidating any aspect
of the state court's judgment." Thomas, 481 F.3d at 438.
Therefore, the Rooker-Feldman doctrine does not bar Plaintiff's
retaliation claim.

### 3.   Malicious Prosecution

Plaintiff's malicious prosecution claim under the
Fourth Amendment similarly is not barred by Rooker-Feldman
because the alleged harms were not caused by any state court
judgment. Mikhail, 991 F. Supp. 2d at 620.

Plaintiff's claim appears to relate to the domestic
relations proceedings that had taken place in Delaware County.
He specifically refers to his arrest on January 10, 2013, August
18, 2014, March 18, 2015, and May 4, 2015. Second Am. Compl. ¶
55(b). Plaintiff alleges that Defendant Tyrone Bradley contacted
Plaintiff in June 2012 to request that he report to the Delaware
County Domestic Relations office even though "[n]o complaint had
been filed in Georgia or Pennsylvania against Plaintiff." Id.
¶ 7. Plaintiff also alleges that after Plaintiff signed an
acknowledgment of paternity claiming his daughter, Defendants
Bradley and Rogers began questioning him about his income and
then "had Judge Linda Carisano sign the acknowledgement of

paternity" even though "Bradley and Rogers knew a Complaint did not exist to justify Judge Carisano signing the acknowledgment of paternity." Id. ¶ 8.

The issue of whether this activity constitutes malicious prosecution was not previously litigated in state court. Moreover, it is not inextricably intertwined with a state court judgment because it alleges a harm leading up to the state court proceedings. Id. at 614. Therefore, Rooker-Feldman does not bar Plaintiff's malicious prosecution claim.

### 4. Equal Protection

Likewise, Plaintiff's equal protection claim is not barred by Rooker-Feldman. Although the basis for Plaintiff's equal protection claim is unclear,[7] if such an issue were properly pled, Plaintiff did not actually litigate an equal protection claim in state court, and it is not inextricably intertwined with the state court support proceedings. See Desi's Pizza, Inc. v. City of Wilkes-Barre, 321 F.3d 411, 423 (3d Cir. 2003) (explaining that the plaintiff's equal protection and

---

[7]    Plaintiff refers to the "equal protection clause," but he has not alleged any facts indicating he is a member of a protected class, similarly situated to members of an unprotected class, or treated differently from the unprotected class. Garrison v. Yeadon, No. 02-7731, 2003 WL 21282115, at *5 (E.D. Pa. Jan. 6, 2003). Moreover, Plaintiff has failed to plead an equal protection claim as a "class of one" because he has not alleged any facts indicating he was intentionally treated differently from others similarly situated. Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (per curiam).

statutory discrimination claims were not precluded by Rooker-Feldman because the plaintiff did not actually litigate the claims in state court and the claims were not inextricably intertwined with state court proceedings). "[A] decision in the plaintiff['s] favor on [his] federal equal protection . . . claim would not mean that the state court erred" in finding that Plaintiff owed child support and failed to pay it. See id.

### 5.   False Arrest

In contrast to the foregoing claims, Plaintiff's Fourth Amendment false arrest claim is barred by Rooker-Feldman. Like Plaintiff's malicious prosecution claim, Plaintiff's claim appears to relate to the domestic relations proceedings that had taken place in Delaware County. He specifically refers to his arrest Plaintiff's arrests on January 10, 2013, August 18, 2014, March 18, 2015, and May 4, 2015, as the basis for his false arrest claim. Am. Compl. ¶ 55(b).

These arrests were "direct results of the contempt order[s]" by the state court." Tarapchak v. Schuylkill Cty., No. 13-1895, 2014 WL 4626701, at *3 (M.D. Pa. Sept. 15, 2014). Accordingly, Plaintiff could not be afforded relief by this Court without reviewing the basis for the state court determination and then invalidating the state court order itself. Therefore, Plaintiff's false arrest claim is

inextricably intertwined with the state court proceedings and
must be dismissed under the Rooker-Feldman doctrine.

### 6.   Due Process

Plaintiff's due process claim is also barred by the
doctrine. In Ludwig v. Berks County, Pennsylvania, 313 F. App'x
479 (3d Cir. 2008) (nonprecedential), the Third Circuit
determined that the district court properly dismissed the
plaintiff's due process claim under Rooker-Feldman. Id. at 481.
The court explained that the plaintiff raised a federal due
process claim, but her "assertions that [the state court]
precluded her from presenting evidence and cross-examining
witnesses and misapplied the law indirectly attack[ed] the
custody determination adjudicated in state court." Id. The court
concluded that "[b]ecause a ruling that [plaintiff's] due
process rights were violated based on [the state court judge's]
rulings would have required the District Court to find that the
state court judgment was erroneous, the Rooker-Feldman doctrine
bars [the plaintiff's] claims against [the state court judge]."
Id.

Here, like in Ludwig, Plaintiff frames his injuries as
a violation of his federal due process rights. Although
Plaintiff has not named a state court judge as a defendant,
Plaintiff asserts that evidence of his income was improperly

used against him in the support proceedings. Second Am. Compl. ¶¶ 10, 31. He alleges that his tax information was "hearsay." Id. ¶ 19. Because a ruling that Plaintiff's due process rights were violated based on the state court proceedings against him would require the Court to find that the state court rulings on this evidence were erroneous, the Court does not have jurisdiction to hear the claim.

In sum, the Rooker-Feldman doctrine bars the Court from exercising jurisdiction over Plaintiff's claims for false arrest and violation of due process. However, because relief could be granted on Plaintiff's claims for fraud upon the court, retaliation, and violation of equal protection without determining "that the state court wrongly decided the issues before it," FOCUS v. Allegheny Cty. Court of Common Pleas, 75 F.3d 834, 840 (3d Cir. 1996), those claims are not barred by the Rooker-Feldman doctrine. See generally McKnight v. Baker, 343 F. Supp. 2d 422 (E.D. Pa. 2004) (determining that the Rooker-Feldman doctrine did not bar jurisdiction over the plaintiff's claims that defendants had denied his constitutional rights concerning access to the courts, privacy, freedom from racial and gender discrimination, and freedom from retaliation for pursuing a claim in federal court).

C.    Quasijudicial Immunity

Defendants also argue that all of the employees of Delaware County Domestic Relations Services are protected by quasijudicial immunity from any claims against them in their "individual capacity." Defs.'s Mem. 6-8.

Despite § 1983's "broad language, the Supreme Court has consistently held that this provision did not abolish long-standing common law immunities from civil suits." Ernst v. Child & Youth Servs., 108 F.3d 486, 493 (3d Cir. 1997) (citing Burns v. Reed, 500 U.S. 478, 484 (1991)). "A judicial officer in the performance of his or her duties has absolute immunity from suit." Kwasnik v. LeBlon, 228 F. App'x 238, 243 (3d Cir. 2007) (nonprecedential). Of course, "[a]bsolute immunity does not apply in every action against a judge or court personnel." Id. Instead, "it [is] the nature of the function performed, not the identity of the actor who performed it, that informs[] [the] immunity analysis." Forrester v. White, 484 U.S. 219, 229 (1988). "When judicial immunity is extended to officials other than judges, it is because their judgments are 'functional[ly] comparab[le]' to those of judges--that is, because they, too, 'exercise a discretionary judgment' as a part of their function." Antoine v. Byers & Anderson, Inc., 508 U.S. 429, 436 (1993) (citations omitted).

The Third Circuit has stated that "any claims against [Domestic Relations Section] employees in their individual

28

capacities for their roles in initiating and prosecuting child support proceedings would be barred by the doctrine of quasi-judicial immunity." Bryant v. Cherna, 520 F. App'x 55, 58 (3d Cir. 2013) (nonprecedential) (citing Ernst, 108 F.3d at 495). Such employees may enjoy the benefits of absolute quasijudicial immunity because (1) their functions in proceedings are "closely analogous to the functions performed by prosecutors in criminal proceedings"; (2) "the public policy considerations that countenance immunity for prosecutors" are applicable to Domestic Relations Section employees performing these functions; and (3) support proceedings "incorporate important safeguards that protect citizens from unconstitutional actions" by such employees. Ernst, 108 F.3d at 495.

Here, Plaintiff brings suit against individual Delaware County Domestic Relations Services defendants based on their "actual name or fictitious number." Second Am. Compl. ¶ 4. The named defendants, all officers of the Domestic Relations Section of Delaware County, are entitled to quasijudicial immunity for their acts. See Lepre v. Tolerico, 156 F. App'x 522, 525 (3d Cir. 2005) (nonprecedential) ("[T]hese defendants, all of whom are officers of the Domestic Relations Section of the Family Court of Lackawanna County, are entitled to quasi-judicial immunity for their actions in filing the Petition enforcing the Family Court's support order in accordance with

Pennsylvania Rule of Civil Procedure 1910.25."). Therefore, to the extent Plaintiff's claims for monetary relief survive the jurisdictional doctrines discussed above, the Court will dismiss those claims based on quasijudicial immunity.

        D.    <u>Failure to State a Plausible Cause of Action</u>

        Defendants additionally move to dismiss Plaintiff's Second Amended Complaint for failure to state a plausible claim of action. Defs.'s Mem. 8-13. This basis for dismissal need not be addressed because injunctive relief cannot be afforded due to <u>Younger</u> abstention, damages for the false arrest and due process claims cannot be afforded due to the <u>Rooker-Feldman</u> doctrine, and any remaining claims for damages against the individual defendants cannot be afforded due to quasijudicial immunity.

        E.    <u>Leave to Amend</u>

        Finally, it is generally true that courts should grant leave to amend a complaint before dismissing it as merely deficient, "unless a curative amendment would be inequitable, futile, or untimely." <u>Alston v. Parker</u>, 363 F.3d 229, 236 (3d Cir. 2004). Here, however, Plaintiff has filed a total of three complaints, ECF Nos. 1, 17, 35, having been granted leave to amend twice before. ECF Nos. 16, 33. Plaintiff's complaints continually fail to set forth any additional--let alone sufficient--facts indicating a viable claim for relief.

30

Moreover, granting Plaintiff any further leave to amend would be futile given that his claims are barred by <u>Younger</u> abstention, the <u>Rooker-Feldman</u> doctrine, and Defendants' quasijudicial immunity. Thus, the Court will dismiss Plaintiff's Second Amended Complaint without leave to amend.


**IV.   CONCLUSION**

For the foregoing reasons, the Court will grant Defendants' motion and dismiss Plaintiff's Second Amended Complaint with prejudice.